**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| ATLANTIC RESEARCH MARKETING SYSTEMS, INC.,<br><br>Plaintiff,<br>v.<br><br>STEPHEN P. TROY, JR. AND TROY INDUSTRIES, INC.,<br><br>Defendants. | Civil Action No. 1:08-mc-00051-S-DLM |

**OPPOSITION TO PLAINTIFF'S MOTION TO QUASH A DEPOSITION SUBPOENA SERVED ON ITS RHODE ISLAND ATTORNEYS (REDACTED)**

Defendants, Stephen P. Troy, Jr. and Troy Industries, Inc. (collectively, "Troy"), hereby oppose Plaintiff's Motion to Quash a Deposition Subpoena Served on its Rhode Island Attorneys.

## I. BACKGROUND

On February 1, 2002, Richard Swan ("Swan"), ARMS founder and president, filed a patent application on a firearm handgrip that attached to the top of a firearm upper receiver (the part of the weapon to which the barrel is attached). Swan's application was filed and prosecuted by a Massachusetts attorney, John McGonagle. The application issued as U.S. Patent No. 6,499,245 ("the '245 Patent") on December 31, 2002. The ARMS system described in the '245 Patent attaches to the top of the upper receiver of a rifle and raises the top of the receiver to a point higher than found on the weapon as it is originally configured. This can, *inter alia,* interfere with the rear sight of the weapon.

Stephen Troy, a former ARMS employee and the founder and president of Troy Industries, Inc., subsequently designed a new handguard, that attaches to the weapon by

clamping to the barrel nut (which screws the barrel into a recess in the front face of the upper receiver). This design permits the top of the handguard to be flush with the top of the upper receiver, and does not affect the top of the receiver in any way. Troy produced and marketed such a configuration at a trade show in February, 2004. Troy also filed a patent application on the handguard, and disclosed Swan's '245 patent to the Patent Office. On May 15, 2007, the PTO determined that Troy's handguard was novel and nonobvious over, among other things, the '245 patent, and awarded Steven Troy U.S. Patent No. 7,216,451 (the "'451 Patent").

Meanwhile, ARMS, upon discovering Troy's new handguard design, reviewed its '245 Patent and seized on a particular component, a "special yoke," as a reason to file a reissue application on March 29, 2004. For the reissue application, ARMS utilized the services of Barlow, Josephs & Holmes, a Rhode Island law firm. In this reissue application, ARMS included new claims clearly intended to cover Troy's design. ARMS did not disclose the existence of the Troy handguard while prosecuting the reissue application. On January 16, 2007, the PTO reissued the '245 Patent as U.S. Patent No. RE39,465 ("RE39,465").

Thereafter, on February 5, 2007, Troy filed with the PTO an *inter partes* Request for Reexamination, challenging the Swan reissued patent. The PTO determined that "a substantial new question of patentability exists" with regard to the Swan patent, and issued rejections of various claims. The reexamination is still proceeding, and a number of claims stand rejected.

ARMS filed a patent infringement and interference suit against Troy on August 23, 2007, claiming patent infringement and interference on its patent by Troy and seeking declaratory judgment that the Troy patent is "invalid or owned by A.R.M.S." ARMS also asserts a variety of state law claims. Troy filed a counterclaim of infringement against ARMS.

On May 2, 2008, Troy noticed the deposition of ARMS pursuant to Fed. R. Civ. P.

30(b)(6). A copy of the Notice of Deposition is attached as **Exhibit A**. Troy listed the Topics to be covered during the deposition on an attached Schedule A to the Notice of Deposition, *see* pages 5-7, Exhibit A. The Topics listed on the Schedule A included, but were not limited to:

3. The preparation of, filing of, and prosecution of the '465 Patent, including, without limitation, the prosecution of the application that led to U.S. Patent No. 6,499,245, the reissue application that led to the '465 Patent, and the reexamination of the '465 Patent.

8. All patents and patent applications that ARMS claims cover any part of any ARMS S.I.R. product.

14. All facts and contentions supporting any ARMS allegation that any claim of the '451 Patents is invalid, including but not limited to the scope and content of any Prior Art that ARMS asserts invalidates any claim of the '451 Patent.

15. All facts and contentions supporting any ARMS' allegation that any claim of the '451 Patent is not infringed by ARMS #50M-CV S.I.R.™ Product.

16. All facts and contentions supporting ARMS' allegation that none of the claims of the '451 Patent was willfully infringed by ARMS.

17. All facts and contentions supporting any allegation by ARMS that the '451 Patent is unenforceable, including but not limited to all facts and contentions supporting any allegation by ARMS that Troy Industries, Inc., the inventors, or anyone else involved in the prosecution of the '451 Patent committed inequitable conduct.

22. All facts and contentions supporting the allegations contained in Count IX [the interference count] of the Complaint.

On May 14, 2008, ARMS served its objections and responses to Troy's Notice of

Deposition pursuant to Fed. R. Civ. P. 30(b)(6). A copy of ARMS' May 14, 2008 letter is attached as **Exhibit B**. ARMS interposed some general objections without objecting to any specific topic, and designated Richard Swan to testify in response to all Topics. *See* Exhibit B.

Swan was deposed at the Boston office of Troy's counsel on May 15 and 16, 2008, testifying both on his own behalf and as ARMS' Fed. R. Civ. P. 30(b)(6) designee. As will be detailed in greater detail below, during the two days of testimony, Richard Swan repeatedly could not or would not answer questions, instead referring Troy's counsel to Swan's patent attorney.

## II. LEGAL STANDARD

The attorney-client privilege is not limitless, and courts must take care to apply it only to the extent necessary to achieve its underlying goals. See, e.g., XYZ Corp. v. United States (In re Keeper of the Records), 348 F.3d 16, 22 (1st Cir. 2003); In re Grand Jury Subpoena (Custodian of Records, Newparent, Inc.), 274 F.3d 563, 571 (1st Cir. 2001). "In other words, the attorney-client privilege must be narrowly construed because it comes with substantial costs and stands as an obstacle of sorts to the search for truth." XYZ Corp., 348 F.3d at 22; see, also, e.g., United States v. Nixon, 418 U.S. 683 (1974); In re Grand Jury Subpoena, 274 F.3d at 571.

In federal question cases, privileges are determined under federal common law. Fed. R. Evid. 501. The elements of the attorney-client privilege are: (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection may be waived. See United States v. Bisanti, 414 F.3d 168, 171 (1st Cir. Mass. 2005). The party asserting the privilege has the burden of proving the existence of the privilege.

See United States v. Schaltenbrand, 930 F.2d 1554, 1562 (11th Cir. 1991); Universal City Dev. Ptnrs, Ltd. v. Ride & Show Eng'g, Inc., 230 F.R.D. 688, 690 (M.D. Fla. 2005). "Because the privilege has the effect of withholding relevant information, it is applied only when necessary to achieve its purpose." See Vardon Golf Co. v. Karsten Mfg. Corp., 213 F.R.D. 528, 532 (N.D. Ill. 2003); see also United States v. White, 970 F.2d 328, 334 (7th Cir. 1992) (noting that although violation of the privilege is a serious matter, the privilege is "in derogation of the search for truth . . . and this circuit has repeatedly held that it must be strictly confined[]").

The attorney-client privilege is subject to waiver. Vardon Golf Co. v. Karsten Mfg. Corp., 213 F.R.D. 528, 532 (N.D. Ill. 2003); see also United States v. Stewart, 51 F. Supp. 2d 1147, 1151 n.3 (D. Kan. 1999) ("It has long been the law that a client may waive protection of the [attorney-client] privilege, either expressly or impliedly."). A client may waive his privilege either expressly, or implicitly by conduct that extinguishes one of the necessary elements of the privilege. Tasby v. United States, 504 F.2d 332, 336 (8th Cir. 1974), cert. denied 419 U.S. 1125.

The attorney-client privilege belongs to the client, not the attorney, and the client can waive the privilege unilaterally. See, e.g., Sorenson v. Riffo, 2008 U.S. Dist. LEXIS 46642, 16-17 (D. Utah June 16, 2008) (holding that the attorney-client privilege is a right that belongs to the client and may be waived by the client himself or by an attorney acting on his behalf); Catino v. Travelers Ins. Co., 136 F.R.D. 534, 537 (D. Mass. 1991) (determining that attorney could not assert privilege where the client had explicitly waived the privilege); Russell v. Curtin Matheson Scientific, Inc., 1980 U.S. Dist. LEXIS 17051, 3-4 (D. Tex. 1980) ("[a]n attorney can neither invoke nor waive the privilege if his client desires the contrary."); see also, e.g., Republic Gear Co. v. Borg-Warner Corp., 381 F.2d 551, 556 (2nd Cir. 1967). With respect to a corporation, "the power to waive the corporate attorney-client privilege rests with the corporation's

management and is normally exercised by its officers and directors." IMC Chems., Inc. v. Niro Inc., 2000 U.S. Dist. LEXIS 22850 (D. Kan. July 19, 2000) (quoting Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, (1985)).

A subpoena should not be quashed on the basis of privilege where the privilege has been waived. See Fed. R. Civ. P. 45(c)(3)(A)(iii); see also, e.g., Simmons Foods, Inc. v. Willis, 191 F.R.D. 625, 630 (D. Kan. 2000). One seeking a protective order or to quash a subpoena carries the burden to show good cause and/or the right to be protected. See, e.g., Simmons Food, 191 F.R.D. at 630; Sentry Ins. v. Shivers, 164 F.R.D. 255, 256 (D. Kan. 1996). Courts do not favor thwarting a deposition, and barring extraordinary circumstances, courts rarely will grant a protective order which totally prohibits a deposition. See Simmons Foods, 191 F.R.D. at 630. (citation omitted).

Further, attorneys are not immune from depositions when they possess discoverable information that is relevant to the case. See, e.g., Sorenson, 2008 U.S. Dist. LEXIS 46642 at 21-22 ("An attorney, even an attorney for a party to the suit, is subject to being deposed. Courts do not favor thwarting a deposition. Barring extraordinary circumstances, courts rarely will grant a protective order which totally prohibits a deposition."); Simmons Foods, 191 F.R.D. at 630 (quoting Mike v. Dymon, Inc., 169 F.R.D. 376, 378 (D. Kan. 1996) ("An attorney, even an attorney for a party to the suit, is subject to being deposed."). Depositions of opposing counsel have been permitted where the party seeking the deposition has shown that (1) there is no other way to obtain the information; (2) the desired information is both relevant and nonprivileged; and (3) the information is critical to the preparation of the case. See id.

## III. ARGUMENT

Richard Swan is the founder and President of Plaintiff ARMS, and is the sole inventor on

the patent-in-suit. As such, any privilege attaching to the prosecution of the applications that led to the patent-in-suit belongs to either Swan or ARMS, and Swan has authority to waive that privilege. IMC Chems., Inc., 2000 U.S. Dist. LEXIS at 22850.

During the two days of testimony provided on behalf of ARMS, Richard Swan expressly and repeatedly waived the attorney-client privilege on patent issues, requesting that Defendants question his patent attorneys rather than himself on topics to which ARMS did not previously specifically object.

By way of example, when asked whether, in his understanding, claim 31 of his own reissued patent included a receiver sleeve, Swan, ARMS' sole 30(b)(6) designee and the sole inventor listed on the patent, deferred to his patent counsel:

[redacted]

Depo. Tr., 307.21-308.19.[1] Swan again deferred to his patent counsel when asked other questions related to Claim 31 of his reissued patent:

[redacted]

[1] A copy of Swan's deposition transcript is being filed under seal pursuant to LR Gen 102(b) as **Exhibit C**.

[redacted]

Depo Tr., 322.8-323.15.

[redacted]

Depo Tr., 324.8-324.20; *see also* Depo. Tr., 308.20-312.2.

When asked for details on the basis for ARMS' denial that it infringes the claims of Troy's patent, Swan replied, [redacted] Depo Tr., 341.7-18. When asked about elements of ARMS' design that are not claimed in Troy's patent, Swan replied, [redacted] Depo. Tr., 342.2-9. When asked about ARMS' awareness of any elements in the current design of the product at issue considered to be not covered by Mr. Troy's patent, Swan replied, [redacted] Depo. Tr., 342.17-343.5. When asked if he thought he should be named as an inventor on the Troy patent, Swan replied that he [redacted] Depo Tr., 345.10-346.12. When asked on what facts ARMS bases its allegations that the Troy

patent is not valid or is unenforceable, Swan testified, [redacted] Depo Tr., 346.13-19. When asked whether, in his opinion as the inventor of the patent, the patent covers a universal receiver sleeve (an ARMS product), Swan testified [redacted]

When asked about ARMS' patent claims as to his own purported invention, Troy's patent claims, and the facts and defenses as to either, Swan, as ARMS' designee, systematically refused to provide meaningful answers, instead deferred to his patent counsel. Swan refused to answer questions as to patent documents placed in front of him, again deferring to his patent counsel. The deposition transcript is replete with invitations by Swan for Troy's counsel to question Swan's patent counsel, without drawing a privilege objection from ARMS' litigation counsel.

Swan's repeated referred of questions relating to his and his company's understanding of the '465 patent and claims, as well as relating to the facts and circumstances surrounding the patent-related counts of ARMS' lawsuit, to his patent attorney, constitutes an express waiver.[2] The information sought is relevant and should be provided by ARMS. See United States v. Taylor, 166 F.R.D. 356, 361 (M.D.N.C. 1996) (internal citations omitted) (holding that a 30(b)(6) designee "must not only testify about facts within the corporation's knowledge, but also its subjective beliefs and opinions. The corporation must provide its interpretation of documents and events."). In the face of ARMS' waiver, the deposition subpoena to Barlow, Josephs & Holmes should not be quashed. Fed. R. Civ. P. 45(c)(3)(A)(iii); Simmons Foods, 191 F.R.D. at 630.

Further, Barlow, Josephs & Holmes are not immune from deposition due to their status as

---

[2] Indeed, ARMS has thus far failed to produce a privilege log, some five plus months after being served with discovery requests. ARMS' failure to produce a privilege log calls into question the seriousness of ARMS' contentions that any of this information is actually privileged in the first instance.

attorneys. Sorenson v. Riffo, 2008 U.S. Dist. LEXIS 46642 at *21-22 ("An attorney, even an attorney for a party to the suit, is subject to being deposed. Courts do not favor thwarting a deposition. Barring extraordinary circumstances, courts rarely will grant a protective order which totally prohibits a deposition."). Here, there is no other way to obtain the information sought, given that Swan has refused to provide the information, and ARMS has refused to designate another witness to testify on its behalf as to these topics, raising obstacles to every attempt by Defendants to obtain the information. See id. Accordingly, the deposition should be allowed to proceed.

## IV. In the Alternative, Defendants Ask This Court to Stay Its Ruling

Currently, Defendants' Motion to Compel is outstanding in the Massachusetts District Court (CA # 07-cv-11576 (PBS)). Defendants' motion seeks to compel additional 30(b)(6) deposition testimony from ARMS on, among other things, the above-referenced topics. If the Massachusetts District Court rules in the Defendants' favor, providing Defendants with an opportunity to obtain this information from ARMS rather than from ARMS' attorneys, ARMS' Motion to Quash will be moot. Under such a circumstance, assuming that ARMS puts forth a real effort to educate itself and provide substantive responses to Defendants' questions on these topics, Defendants would consider withdrawing the subpoena voluntarily. Accordingly, in the alternative to denying Plaintiff's motion, Defendants ask this Court to stay its ruling on the motion until the Motion to Compel in Massachusetts is decided.

## CONCLUSION

For the foregoing reasons, Troy respectfully requests that this Court deny Plaintiff's motion and permit Defendants to depose Barlow, Josephs & Holmes.

Respectfully submitted,

Dated: July 14, 2008

TROY INDUSTRIES, INC.
AND STEPHEN P. TROY,

By their Attorneys

/s/ Keith F. Noe

Keith F. Noe (R.I. Bar No. 5297)
LOWRIE, LANDO & ANASTASI, LLP
Riverfront Office Park
One Main Street, 11th Floor
Cambridge, MA 02142
Telephone: (617) 395-7000
Facsimile: (617) 395-7070
emailservice@LL-A.com

**REQUEST FOR ORAL ARGUMENT**

If the Court deems it necessary, Troy requests oral argument on this Motion to Quash.

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing OPPOSITION TO PLAINTIFF'S MOTION TO QUASH A DEPOSITION SUBPOENA SERVED ON ITS RHODE ISLAND ATTORNEYS (Redacted) was sent via ECF electronic service to those persons listed below, this 14th day of July, 2008. An unredacted copy, with Exhibits, will be served by overnight courier, pursuant to the pending MOTION FOR LEAVE TO FILE UNDER SEAL OPPOSITION AND EXHIBIT TO PLAINTIFF'S MOTION TO QUASH A DEPOSITION SUBPOENA SERVED ON ITS RHODE ISLAND ATTORNEYS.

Craig M. Scott, Esq.
Christine K. Bush, Esq.
DUFFY, SWEENEY & SCOTT LLP
One Turks Head Building, Ste. 1200
Providence, RI 02903
cscott@duffysweeney.com
cbush@duffysweeney.com

/s/ Keith F. Noe

Dated: July 14, 2008