**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| ATLANTIC RESEARCH MARKETING SYSTEMS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>STEPHEN P. TROY, JR., AND TROY INDUSTRIES, INC.,<br><br>Defendants. | C.A. No. MISC 08-51S |

**[Redacted] REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO QUASH A DEPOSITION SUBPOENA SERVED ON ITS RHODE ISLAND ATTORNEYS**

In their Objection to Plaintiff's Motion to Quash Deposition Subpoena, Defendants Stephen P. Troy, Jr. and Troy Industries, Inc.'s (collectively "Troy") argue that Atlantic Research Marketing Systems, Inc.'s ("A.R.M.S.") Rule 30(b)(6) designee waived A.R.M.S.'s attorney-client privilege, thereby justifying Defendants' subpoena of A.R.M.S.'s attorneys for deposition. Defendants' argument is internally inconsistent. If, as Defendants claim, A.R.M.S.'s Rule 30(b)(6) designee waived the privilege by disclosing the substance of Plaintiff's communications with its patent counsel over several years, then there would be no need to depose the attorneys now because Defendants already would have elicited the information.

In fact, there was no waiver. Defendants' counsel sought information from a lay witness on technical patent questions that required patent expertise and called for a legal conclusion. The Rule 30(b)(6) witness, not surprisingly, could not answer some of the questions. The designee's inability to answer does not amount to a waiver, nor was it inappropriate in light of the premature

and highly technical questions posed, and the fact that Stephen Troy, Defendants' Rule 30(b)(6) designee, has substantively identical responses when confronted with similar questions.

A. **A.R.M.S. Did Not Waive the Attorney-Client Privilege**.

The attorney-client privilege is well-established: "[b]y safeguarding communications between client and lawyer, the privilege encourages full and free discussion, better enabling the client to conform his conduct to the dictates of the law and to present legitimate claims and defenses if litigation ensues." *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)). Waiver of this highly-regarded privilege occurs "[w]hen otherwise privileged communications are disclosed to a third party." *Id.* (citing 2 Paul R. Rice, Attorney-Client Privilege in the U.S. § 9:79, at 357 (2d ed. 1999)); *see also U.S. v. Massachusetts Institute of Technology,* 129 F.3d 681, 685 (1st Cir.1997) ("the general principle that disclosure normally negates the privilege is worth maintaining. To maintain it here makes the law more predictable and certainly eases its administration"); *In re Grand Jury Proceedings,* 78 F.3d 251, 254 (6th Cir. 1996) (noting voluntary disclosure of attorney's advice to a third party waives privilege because the disclosure runs counter to notion of confidentiality); *United States v. Buljubasic*, 808 F.2d 1260, 1268 (7th Cir. 1987) (finding that the attorney-client privilege is not waived *unless* portions of communications that are private between attorney and client are revealed).

"An express waiver occurs when a client voluntarily discloses the content of privileged communications." *Union County, IA v. Piper Jaffray & Co., Inc.*, 248 F.R.D. 217, 220 (S.D. Iowa 2008). It must be "clear and intentional." *Russell v. Curtin Matheson Scientific, Inc.*, 1980 WL 374, * 2 (S.D. Tex. 1980). For this reason, the First Circuit has noted that cases of express

waiver tend to be "[t]he easy cases." *See XYZ Corp.*, 348 F.3d at 23 (citing examples of cases where the privilege was explicitly waived); *see, e.g., United States v. Lussier*, 71 F.3d 456, 462 (2d Cir.1995) ("unambiguous waiver" with regard to prior communication with former counsel); *Catino v. Travelers Ins. Co.*, 136 F.R.D. 534, 536-37 (D. Mass. 1991) (client "explicitly waived" the privilege).

Here, Troy contends that A.R.M.S. "expressly and repeatedly" waived the attorney-client privilege when A.R.M.S.'s principal, Richard Swan, could not answer questions concerning A.R.M.S.'s legal interpretations of terms in claims of certain patents. That is the antithesis of a "clear and intentional" waiver: A.R.M.S.'s designee did not reveal any confidential communications to a third party, but rather, answered the questions factually to the best of his ability but then could not could not provide testimony as to legal conclusions. Since the subject matter was not disclosed and, in fact, no testimony was elicited on certain points, that is not an express privilege waiver. *See XYZ*, 348 F.2d at 22 (when otherwise privileged communications are disclosed to a third party, the disclosure destroys the confidentiality upon which the privilege is premised)

Nor was Mr. Swan's inability to provide expert opinion or draw legal conclusions an implied waiver of the attorney-client privilege. First Circuit law evaluates claims of implied waiver in light of principles of logic and fairness. That evaluation demands a "fastidious sifting of the facts and a careful weighing of the circumstances." *XYZ Corp.*, 348 F.3d at 24. The case law reveals few genuine instances of implied waiver. *Id.* (citing 8 John Henry Wigmore, Evidence § 2327, at 635 (John T. McNaughton ed. 1961)).

Mr. Swan's testimony does not amount to an implied waiver. There was no effort to use the attorney-client privilege as both a shield and a sword, *see XYZ Corp.*, 348 F.3d at 23, but,

instead, candid testimony from a lay witness that no one from family-owned A.R.M.S. has the patent expertise or background to draw the legal conclusions required by Defendants' counsel's questions. A.R.M.S.'s witness simply answered deposition questions to the best of his knowledge and ability and occasionally stated that he could not answer certain legal questions that required him to interpret patent claims and make legal conclusions concerning the validity and enforceability of patents.

To that point, Troy largely misconstrues A.R.M.S.' deposition testimony. For example, Troy argues, "When asked for details on the basis for ARMS' denial that it infringes the claims of Troy's patent, Swan replied, 'I would have to wait for my patent attorney and I to go over all the different aspects to get into it in details.'" (Motion to Compel, p. 9.) This excerpt is misleading. The immediately preceding question and answer were:

> Q. What is the basis for ARMS denying that it infringes the claims of Mr. Troy's patent?
>
> A. I don't know how I could infringe his patent when I designed what he's got a patent on.

(Swan Depo. Tr. 341:7-11.) From this response, the basis for A.R.M.S.' denial of infringement is clear. The question asked for a legal conclusion, A.R.M.S. answered it to the best of its ability, and it was only when Troy's counsel asked for *other* bases for denying infringement that A.R.M.S.'s witness responded that he could not answer further.

Additionally, Troy's Rule 30(b)(6)[1] designee as to all areas of testimony, Stephen Troy, was similarly unable to testify to the patent-related topics requiring legal conclusions and expert testimony. For example, when asked about Troy's defense of inequitable conduct, and specifically the consequence of not disclosing the '650 patent in the prosecution of the '245

---

[1] The parties' respective Rule 30(b)(6) notices to each other are nearly identical, and functionally equivalent for purposes of the issues raised herein.

patent, Troy offered no substantive response but testified that [redacted] (*See* Deposition Transcript of Stephen Troy ("Troy Depo. Tr.") 297:13, relevant excerpts of which are attached hereto as Ex. A [ Filed under seal].) Moreover, when asked whether the '650 patent anticipates the '465 patent under 35 U.S.C. § 102, he stated that [redacted] (Troy Depo. Tr. 298:1.) He also did not have an understanding of the scope of protection under the '650 patent. (Troy Depo. Tr. 298:6.)

For all these reasons, A.R.M.S.'s testimony was appropriate and does not amount to a waiver of the attorney client privilege, and the subpoena Defendants served on Plaintiff's patent counsel should be quashed.

## B. The Court Should Not Stay Its Ruling on A.R.M.S.'s Motion.

Troy argues that the Court should delay ruling on this Motion because Defendants have a Motion to Compel pending in the Massachusetts District Court. Defendants' pending Motion to Compel testimony underscores the fact that A.R.M.S.'s did not make a disclosure to third parties and, for that reason alone, supports Plaintiff's Motion to Quash Subpoena.

Additionally, fact discovery has closed in this case. Written expert reports are due shortly, and the parties will have an opportunity to take expert depositions over the next few months. Troy's wait-and-see approach is not sensible in light of this schedule. Granting A.R.M.S.'s motion, on the other hand will immediately eliminate any uncertainty on the issue, preclude the deposition and appropriately allow the parties to proceed with expert discovery.

## CONCLUSION

For all these reasons, Plaintiff respectfully request that the Court quash the Subpoena served on the law firm of Barlow Josephs & Holmes, LTD.

Atlantic Research Marketing Systems, Inc.,
By its Attorneys,

/s/ Christine K. Bush

Craig M. Scott (#4237)
Christine K. Bush (#5587)
DUFFY SWEENEY & SCOTT, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700-Ph
(401) 455-0701-Fax
cbush@duffysweeney.com

Dated: July 21, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of July, 2008, a true copy of the foregoing ***Reply in Support of Motion to Quash*** will be mailed via electronic and first class mail to those indicated below.

**Ann Lamport Hammitte**
Lowrie, Lando & Anastasi, LLP
Riverfront Office Park
One Main Street
Cambridge, MA 02142
Email: ahammitte@ll-a.com

**Carla Miriam Levy**
Lowrie, Lando & Anastasi, LLP
Riverfront Office Park
One Main Street
Cambridge, MA 02142
Email: clevy@ll-a.com

**Thomas P. McNulty**
Lowrie, Lando & Anastasi, LLP
Riverfront Office Park
One Main Street
Cambridge, MA 02142
Email: tmcnulty@ll-a.com

**Nicholas A Ogden**
Donovan Hatem LLP
Two Seaport Lane
Boston, MA 02210
617-406-4500 \
Fax: 617-406-4501
Email: nogden@donovanhatem.com

/s/ Christine K. Bush
Christine K. Bush, Esq.

H:\Clients\Atlantic Research Marketing (ARMS)\Troy\Pleadings\RI USDC 08-51\Reply Mot Quash.doc